The Honorable Charles L. Ormond State Representative 1500 View St. Morrilton, AR 72110-3725
Dear Representative Ormond:
I am writing in response to your request, made during your tenure as State Representative, for my opinion on the following question:
 Once Mark Stodola is sworn in as the mayor of Little Rock, would it be a conflict of interest for him to continue to serve as an attorney representing Perry County?
You offer the following as a "case in point": "when Perry County's quorum court is protective of their water rights, would there not be a conflict of interest regarding Central Arkansas Water's[1] proposal to restrict land use?"
RESPONSE
In my opinion, Mayor Stodola would not be under any blanket proscription against continuing to represent Perry County since his accession to the office of mayor.[2] However, depending upon the scope of Mayor Stodola's representation of the county, see A.C.A. § 16-21-114
(Repl. 1999) (authorizing the quorum court to select a county attorney to handle "all civil actions" involving the county), and further depending upon the facts of each particular case, he might be obliged in certain instances to recuse both from representing the county and from voting as an ex officio member of the Little Rock board of directors. One such instance might indeed be the example you have recited in the factual background giving rise to your question — namely, if Perry County were disposed to promote development around Lake Maumelle, which lies partially in the county, whereas the City of Little Rock were inclined to oppose such development in order to protect its water supply from possible pollution.
At issue initially is whether the simultaneous occupations referenced in your request might amount to dual office holding, as distinct from holding the office of mayor while merely contracting for services with the county. It is unclear from your question whether Mr. Stodola is serving Perry County on an ad hoc contract basis, in which case he might in particular instances face a conflict of interest but would not be in the position of holding dual offices, or as the county civil attorney pursuant to A.C.A. § 16-21-114 (Repl. 1999). If the latter is the case, a question will remain whether he qualifies as an "officer" of the county subject to the applicable proscriptions against dual office-holding.[3] As a general rule, holding an "office" involves the exercise of sovereign power in some measure, as well as the taking of an oath of office, the receipt of a formal commission and the giving of a bond. Ark. Ops. Att'y Gen. Nos. 2006-066 and 98-108; Maddox v.State, 220 Ark. 762, 249 S.W.2d 972 (1952). Although a county civil attorney is a statutorily authorized position, A.C.A. § 16-21-114 does not prescribe any of the conditions of office-holding just recited. In my opinion, then, although Mr. Stodola clearly holds an "office" in his position as Little Rock mayor, he would not hold dual offices merely because of his additional engagement as an attorney for Perry County. In my opinion, this conclusion would apply regardless of whether Mayor Stodola were employed by Perry County as the county civil attorney or on a contract basis to handle individual cases.
With respect to your specific request regarding possible conflicts of interest arising from the proposed dual occupations, the only statutory provision that might apply provides as follows:
 (a) No public official or state employee shall use or attempt to use his or her official position to secure special privileges or exemption for himself or herself or his or her spouse, child, parents, or other persons standing in the first degree of relationship, or for those with whom he or she has a substantial financial relationship that is not available to others except as may be otherwise provided by law.
 (b) No public official or state employee shall accept employment or engage in any public or professional activity while serving as a public official which he or she might reasonably expect would require or induce him or her to disclose any information acquired by him or her by reason of his or her official position which is declared by law or regulation to be confidential.
 (c) No public official or state employee shall disclose any such information gained by reason of his or her position, nor shall he or she otherwise use such information for his or her personal gain or benefit.
A.C.A. § 21-8-304 (Repl. 2004).
Also clearly applicable is the common-law prohibition against conflicts of interest, which one of my predecessors has summarized as follows:
 The common law prohibition against conflicts of interest is reflected in the following description of the public policy underlying the principle:
 A public office is a public trust . . . and the holder thereof may not use it directly or indirectly for personal profit, or to further his own interest, since it is the policy of law to keep an official so far from temptation as to insure his unselfish devotion to the public interest. Officers are not permitted to place themselves in a position in which personal interest may come into conflict with the duty which they owe to the public, and where a conflict of interest arises, the office holder is disqualified to act in the particular matter and must withdraw.
 67 C.J.S. Officers § 204. See also Ops. Att'y Gen. 2001-042; 2000-072; 99-349; 98-275; 94-283; and 94-446, citing Van Hovenberg v. Holman, 201 Ark. 370, 144 S.W.2d 719 (1940); Madden v. United States Associates, 40 Ark. App. 143, 844 S.W.2d 374 (1992); Acme Brick Co. v. Missouri Pacific R.R., 307 Ark. 363, 821 S.W.2d 7 (1991); and 63A Am. Jur. 2d, Public Officers and Employees § 321.
Ark. Op. Att'y Gen. No. 2002-273 (emphases added). In Ark. Op. Att'y Gen. No. 2003-007, my immediate predecessor offered the following analysis of this issue:
As my predecessor noted in Ark. Op. Att'y Gen. No. 95-099:
 The "conflict of interest theory" is based "on the fact that an individual occupying a public position uses the trust imposed in him and the position he occupies to further his own personal gain. It is the influence he exerts in his official position to gain personally in spite of his official trust which is the evil the law seeks to eradicate." City of Coral Gables v. Weksler, 164 So.2d 260, 263
(Fla.App. 1964). See also generally 63A Am. Jur. 2d Public Officers and Employees § 321 (1984).
 In Ark. Op. Att'y Gen. No. 93-184, my predecessor summarized the operative inquiry as being whether the officer "has a personal interest which might interfere with the unbiased discharge of his duty to the public." The furtherance of the officer's personal interest is thus the focal point of inquiry in determining whether an unlawful conflict of interest exists at common law. See Van Hovenberg v. Holman, 201 Ark. 370, 144 S.W.2d 719 (1940).
(Emphasis added.) Accord Ark. Op. Att'y Gen. No. 2005-037.
Finally, in an inquiry clearly related to those just discussed, a court weighing the propriety of the proposed dual occupations would inquire whether they might be barred under what has been termed the common-law "doctrine of incompatibility," which applies when holding two occupations simultaneously would generate an inherent conflict that necessarily precludes serving in both capacities. In Thompson v.Roberts, 333 Ark. 544, 549, 970 S.W.2d 239 (1998), the court observed:
 One commentator has explained, `Incompatibility arises, therefore, from the nature of the duties of the offices,[4] when there is an inconsistency in the functions of the two, where the functions of the two are inherently inconsistent or repugnant, as where the antagonism would result in the attempt by one person to discharge the duties of both offices, or where the nature and duties of the two offices are such as to render it improper from considerations of public policy for one person to retain both. Eugene McQuillin, 3 The Law of Municipal Corporations, § 12.67 (3d ed. 1990).
333 Ark. at 549.
Little Rock is a city of the first class with a city manager form of government. The mayor of Little Rock has the authority to vote on municipal matters as an ex officio member of the board of directors, although he lacks the power to veto legislation. A.C.A. § 14-47-116
(Repl. 1998). Needless to say, the mayor has a paramount duty of loyalty to the city he serves. Assuming, then, that Mayor Stodola were to serve simultaneously as the mayor of Little Rock and as counsel to Perry County, he would be obliged to honor both his duty of loyalty to the city and his fiduciary duty to Perry County — dual obligations that might in theory at some point conflict. For instance, specifically with respect to the "case in point" you recite in your question, it may be that at some point Perry County officials will conclude that it would serve the county's interests to promote development of the property adjoining Lake Maumelle, which lies partially in Perry County, whereas the City of Little Rock might fervently oppose such development, which it might perceive as jeopardizing the quality of the city's water supply. Under these circumstances, Mayor Stodola might indeed find himself in a conflict of interest given his dual service as mayor of Little Rock and as counsel for Perry County. However, I do not believe the possibility of this occurrence is sufficient to dictate that Mayor Stodola refrain from continuing his representation of Perry County in any and all instances. Rather, in those cases where a conflict might reasonably be deemed to exist, I believe Mayor Stodola should recuse himself both from representing the county and from voting as a member of the city board of directors. Under the standards discussed above, I do not believe the potential for conflicts of interest or incompatibility in holding the two positions is sufficiently great to dictate that Mayor Stodola refrain altogether from serving as counsel for Perry County.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] As noted in City of Maumelle v. Jeffrey Sand Co., 353 Ark. 686,696, 120 S.W.3d 55 (2003):
 Central Arkansas Water, Inc. (CAW) . . . is not owned by any city. Instead, CAW was created in July 2001 by the merger of the North Little Rock Water Commission and the Water Department of Little Rock. CAW provides water service to a number of cities in Pulaski and Saline Counties and makes water services available to unincorporated areas of Pulaski County.
[2] Mr. Stodola has been sworn in as Mayor of Little Rock in the period since you submitted your request.
[3] As noted in Byrd v. State, 240 Ark. 743, 744-45, 402 S.W.2d 121
(1966), holding dual offices might be proscribed either constitutionally, statutorily or pursuant to the common-law "doctrine of incompatibility" discussed infra.
[4] Notwithstanding the court's use of the term "offices" in this quotation, I believe the doctrine of incompatibility applies as well to the simultaneous holding of an office and a public employment. InThompson, the Court held that the dual service of a mayor as part-time bookkeeper for a city of the second class violated the doctrine of incompatibility and a statute (A.C.A. § 14-42-107). 333 Ark. at 549-50. As my predecessor noted in Ark. Op. Att'y Gen. No. 2006-066:
 [A]lthough previous Attorney Generals' opinions had concluded that the holding of two offices, as opposed to the holding of one office and one employment, is a necessary prerequisite to the applicability of the incompatibility doctrine, this office has since focused on the potential "antagonism" between two positions, and whether service in both capacities is "repugnant" in the sense discussed in Thompson, supra. Ark. Op. Att'y Gen. No. 2003-371 (concluding that determining whether dual service as city recorder/treasurer and hourly employee of the mayor is barred by the incompatibility doctrine is a question of fact). See also Ark. Op. Att'y Gen. No. 99-052 (relying on Thompson to opine that a mayor could not simultaneously serve as a city employee) and Ark. Op. Att'y Gen. No. 98-108
("Any inherent exercise on the part of the City Recorder of supervisory power over the `water clerk' position will lead to [an unlawful conflict of interest].").