The Honorable Curren Everett State Representative 9600 Highway 9 South Salem, Arkansas 72201-2610
Dear Representative Everett:
I am writing in response to your request for an opinion concerning the following arrangement:
The Fulton County Hospital is a county owned facility and operated by a Board of Governors pursuant to A.C.A. § 14-263-101 et seq. In an effort to reduce operating costs the hospital Board of Governors is contemplating entering into an agreement to share a hospital administrator with a privately owned hospital in an adjoining county, i.e., the administrator would work a given number (2 or 3) of days each week at each hospital.
You have requested my opinion "as to whether there is any legal prohibition to such an arrangement and whether there is a conflict of interest that would prohibit such an arrangement."
RESPONSE
It should initially be noted that while the wording of your question suggests that the "arrangement" at issue might involve a contract or agreement of some sort between the Fulton County Hospital and the privately owned hospital, I have learned that this is not the case. Instead, according to my understanding, the Fulton County Hospital Board of Governors has hired the administrator of the other hospital to serve the Fulton County Hospital on a part-time basis.[1]
In my opinion, there is no legal proscription per se against this dual-employment arrangement. The so-called "dual service" by a public officer or employee in more than one position can be prohibited by the constitution or statutes, or by the common law. I find no constitutional provision precluding a county hospital administrator from working part-time as the administrator of a private hospital. Nor is there any general statutory prohibition to this effect. I note in this regard that the Fulton County Hospital Board of Governors (hereinafter "Board"), is charged with "the duty of managing, controlling, and supervising the operation of the county hospital." A.C.A. § 14-263-105(b) (Repl. 1998). The Board is further vested with power and duty to hire personnel, including an "administrative officer." Id. at (d). In my opinion, the Board has general discretion, pursuant to these provisions, to determine the particular terms of the administrator's employment. Moreover, I find no general proscription against a county hospital administrator's part-time employment in the private sector.
The third type of prohibition against dual service is the common law "doctrine of incompatibility." This doctrine ordinarily applies, however, to the concurrent holding of two offices, see Byrd v. State,240 Ark. 743, 402 S.W.2d 121 (1966) and Op. Att'y Gen. 2006-127, although I have opined that it can apply as well to the simultaneous holding of an office and a public employment. See Op. Att'y Gen.2006-219 at n. 4, citing Thompson v. Roberts, 333 Ark. 544,970 S.W.2d 239 (1998) and Op. Att'y Gen. 2006-066. The main point for purposes of your question is that the doctrine of incompatibility simply does not apply when, as here, the potential conflict involves simultaneously holding a public office (viz., county hospital administrator) and a private employment (viz., private hospital administrator). See Op. Att'y Gen. 99-052.
I therefore find no general prohibition against this dual-employment arrangement. As the administrative officer of the county hospital, however, this individual should be aware of several conflict of interest prohibitions which are directed toward preventing public officers and employees from using their positions to attain personal gain over and above that which would normally accrue to them as a result of the performance of their duties. The general county ethics statute, A.C.A. § 14-14-1202, provides in relevant part:
RULES OF CONDUCT. (1) No officer or employee of county government shall:
 (A)(i) Be interested, either directly or indirectly, in any contract or transaction made, authorized, or entered into on behalf of the county or an entity created by the county, or accept or receive any property, money, or other valuable thing for his or her use or benefit on account of, connected with, or growing out of any contract or transaction of a county.
A.C.A. § 14-14-1202(c) (Supp. 2007).
"Officers and employees of county government" for purposes of this provision include "[a]ll members of county boards" and "[a]ll employees thereof." Id. at (b). As noted above, a county hospital board employs an administrator pursuant to A.C.A. § 14-263-105(d), which provides that "[e]ach board [of governors] shall employ, in addition to other personnel, some competent person to act as administrative officer." It also bears noting that the Board may require a bond of the administrative officer. Id. It therefore seems clear that the "rule of conduct" prescribed by the above A.C.A. § 14-14-1202(c)(1)(A)(i) applies to the Fulton County Hospital administrator.
A similar conflict of interest provision applicable to public officials and state employees provides in pertinent part:
 (a) No public official or state employee shall use or attempt to use his or her official position to secure special privileges or exemptions for himself or herself or his or her spouse, child, parents, or other persons standing in the first degree of relationship, or for those with whom he or she has a substantial financial relationship that are not available to others except as may be otherwise provided by law.
 (b) No public official or state employee shall accept employment or engage in any public or professional activity while serving as a public official which he or she might reasonably expect would require or induce him or her to disclose any information acquired by him or her by reason of his or her official position which is declared by law or regulation to be confidential.
 (c) No public official or state employee shall disclose any such information gained by reason of his or her position, nor shall he or she otherwise use such information for his or her personal gain or benefit.
A.C.A. § 21-8-304 (Supp. 2007).
Also clearly applicable is the common-law prohibition against conflicts of interest, which is reflected in the following description of the public policy underlying the principle:
A public office is a public trust . . . and the holder thereof may not use it directly or indirectly for personal profit, or to further his own interest, since it is the policy of law to keep an official so far from temptation as to insure his unselfish devotion to the public interest. Officers are not permitted to place themselves in a position in which personal interest may come into conflict with the duty which they owe to the public, and where a conflict of interest arises, the office holder is disqualified to act in the particular matter and must withdraw.
67 C.J.S. Officers § 204. See also Op. Att'y Gen. Nos. 94-446 and 94-283, citing Van Hovenberg v. Holman, 201 Ark. 370, 44 S.W.2d 719
(1940); Madden v. United States Associates, 40 Ark. App. 143,844 S.W.2d 374 (1992); Acme Brick Co. v. Missouri Pacific R.R., 307 Ark. 363,821 S.W.2d 7 (1991); 63A Am. Jur. 2d Public Officers and Employees § 321.
In Ark. Op. Att'y Gen. 95-099, one of my predecessors offered the following analysis of this issue:
The "conflict of interest theory" is based "on the fact that an individual occupying a public position uses the trust imposed in him and the position he occupies to further his own personal gain. It is the influence he exerts in his official position to gain personally in spite of his official trust which is the evil the law seeks to eradicate." [Citations omitted.]
In Ark. Op. Att'y Gen. No. 1993-184, my predecessor summarized the operative inquiry as being whether the officer "has a personal interest which might interfere with the unbiased discharge of his duty to the public." The furtherance of the officer's personal interest is thus the focal point of inquiry in determining whether an unlawful conflict of interest exists at common law. See Van Hovenberg v. Holman,201 Ark. 370, 144 S.W.2d 719 (1940).
The application of these statutes and principles depends upon the facts of each particular situation. In my opinion, they do not stand as a bar to serving part-time as the administrative officer of a county hospital and a private hospital.
It should also noted in closing that one's simultaneous service as the administrative officer of a county hospital and a private hospital could conceivably create a conflict of interests as a consequence of fiduciary duties owed to both entities. Black's Law Dictionary defines the term "fiduciary capacity" as follows:
One is said to act in a "fiduciary capacity" or to receive money or contract a debt in a "fiduciary capacity," when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part. The term is nor restricted to technical or express trusts, but includes also such offices or relations as those of an attorney at law, a guardian, executor, or broker, a director of a corporation, and a public officer.
Black's Law Dictionary (6th ed. 1990) (emphasis added). Black's further describes a "fiduciary duty" as "the highest standard of duty implied by law." Id.
The hospital administrator undoubtedly owes a fiduciary duty to both the county and the private hospital. I lack the resources and the authority, however, to determine whether the particular dual employment arrangement places this individual in an actual or potential conflict of interests that would amount to a breach of his or her fiduciary duty to one entity or the other. This would require an examination of facts. I am unauthorized, moreover, to offer private legal advice regarding the application of fiduciary principles. The individual in question may wish to consult with private counsel to clarify the scope of his or her fiduciary obligations.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] This clarification is necessary in light of the ethical requirement that "[n]o officer or employee of county government shall . . . [b]e interested, either directly or indirectly, in any contract or transaction made, authorized, or entered into on behalf of the county . . . . " A.C.A. § 14-14-1202(c)(1)(A)(i) (Supp. 2007). This provision does not appear to be implicated under the limited set of facts before me.